IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Roberta J. Pysher,                    :

      Plaintiff,                    :

  v.                                  :        Case No. 2:02-cv-0219

Ohio Department of Jobs and           :
Family Services, et al.,                       MAGISTRATE JUDGE KEMP
                                      :
      Defendants.

OPINION AND ORDER

Plaintiff, Roberta J. Pysher, an employee of the Ohio Department of Jobs and Family Services, filed this action against her employer under 42 U.S.C. §1983.  Her claims arise primarily out of a situation which occurred after Ms. Pysher resumed employment in 1999 with what was then the Ohio Bureau of Employment Services.  Ms. Pysher's employment had been terminated three years earlier but she was reinstated after she pursued legal action to contest her termination.  According to Ms. Pysher, the terms and conditions of her employment after her reinstatement were discriminatory and retaliatory, and she was denied promotions for similar reasons.

Both parties have now moved for summary judgment.  In addition, Ms. Pysher has moved for leave to amend her complaint. This Opinion and Order will resolve each of these motions.

I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c),

demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

II.

In order for the Court to analyze Ms. Pysher's claims properly, it will be necessary to set forth in some detail her version of the events which occurred after her reinstatement and before her transfer away from the Zanesville, Ohio office, where most of the events in question occurred.  These claims relate to

2

her assertion of retaliatory and discriminatory treatment in the workplace.  The Court will also look separately at her multiple applications for promotions, none of which were accepted.  In performing this analysis, the Court keeps in mind that the defendants have raised six primary defenses to Ms. Pysher's claims: (1) that she was never subjected to a materially adverse job action; (2) that she did not experience a hostile work environment; (3) that she may not maintain claims against any of the defendants under the Americans With Disabilities Act because of sovereign immunity and the absence of individual liability on such claims; (4) that she has no claims under the due process clause of the Fourteenth Amendment; (5) that the Eleventh Amendment bars any age-related claims; and (6) that all individual defendants enjoy qualified immunity with respect to each of her constitutional claims.  Because the Court is required to construe the facts in Ms. Pysher's favor at this stage of the case, the following factual statement is taken primarily from her deposition testimony and from other sworn statements or documents which she has submitted in this case.

Ms. Pysher began working for the State of Ohio in approximately 1971.  Initially, she worked at the Department of Taxation, and later transferred to the Office of Manpower Development.  In 1981, the employees of that department were transferred to the Ohio Bureau of Employment Services (OBES), which is now known as the Ohio Department of Jobs and Family Services.  With the exception of a short period of time when she was laid off, and then later reinstated with back pay, Ms. Pysher worked continuously for OBES through 1996.

Ms. Pysher's employment was terminated in 1996.  She challenged that termination both before the State Personnel Board of Review and the United States District Court.  In 1999, she was reinstated to employment with OBES and also received some amount

of back pay.

Before her termination, Ms. Pysher worked at OBES's Columbus East office located on East Main Street.  However, when she was reinstated, she was told to report to the Zanesville office.  Her job title at that office was customer service supervisor.  Her job duties included the supervision of customer service representatives as well as one veterans' representative.  There was one other supervisor in that office, Patrick Hoffer, and he and Ms. Pysher both reported to the office manager, Sam McNair.

One the first difficulties Ms. Pysher experienced after reporting to the Zanesville Office had to do with her desire to be involved in the supervision of the claims process.  Apparently, the employees who worked with that process in the Zanesville office took their supervisory issues to Mr. Hoffer because Ms. Pysher was less experienced in the claims area.  When she complained to Mr. McNair, he sent her to training classes with respect to claims.  Ms. Pysher attempted to fit into the Zanesville office in other ways as well.  According to her, however, she was generally unsuccessful, and ended up performing few, if any, job duties.  By the spring of 2000, she was convinced that the staff of the Zanesville office resented her presence and did not want to work with her.  At some point during her employment in Zanesville, Mr. McNair suggested to her that she should spend her days playing on the computer or going on tours of Zanesville and that she should not attempt to interact with the staff.  To the extent that supervisory duties needed to be performed, Ms. Pysher claims that they were given to Angela Wade, who was one of the employees that she was supposed to be supervising.  During the same time period, Ms. Pysher was upset by a number of things which occurred in the workplace, including what she perceived to be the wearing of inappropriate clothing by some of the female employees, several inappropriate comments made

4

to her by Mr. Hoffer, and a general tension in the workplace which she attributed to the employees' dislike of her having been placed there and her attempts to exercise some supervisory authority or implement new procedures.

Many of these things came to a head on October 20, 2000. Prior to that, Ms. Pysher had counseled Ms. Wade for workplace misconduct, which led to a grievance being filed.  During the grievance hearing, the subject of Ms. Pysher's general dissatisfaction with the workplace came up.  Because it was not germane to that meeting, Ms. Pysher suggested that it be discussed at a later time.  The October 20, 2000 meeting was then scheduled.  At least one meeting on that date was attended by Ms. Pysher, Mr. McNair, Mr. Hoffer, and four others, including Larry Hampton, Linda Warrington, and Jerry Lehman.

Mr. Hoffer was the first person to speak at the meeting.  He stated that Ms. Pysher was irrational, that there were irreconcilable differences in the office, and that she needed to be transferred elsewhere.  Apparently, other office employees were also invited to speak, and they confirmed that there was a high stress level in the office, although they did not necessarily attribute it to a personal dislike of Ms. Pysher. Mr. McNair continued to meet with others throughout the day and then met again with Ms. Pysher.  At that meeting, Mr. Hoffer continued to express anger at Ms. Pysher.  Ms. Pysher spoke with Mr. Hampton after the meeting and asked for a transfer based upon her belief that she was not ever going to be accepted at the Zanesville office.

Ms. Pysher considered the meeting to be a traumatic event and was upset for several weeks afterward, including crying at the workplace.  During the same time frame, she was given a written reprimand for having spoken inappropriately to Mr. McNair on October 16, 2000.  Then, on December 11, 2000, she was

transferred to the Delaware office.  Although she retained the
job of customer service supervisor, she did not supervise
employees in Delaware.  It was only a temporary transfer,
however, and she continued to be officially assigned to the
Zanesville office even though she no longer worked at that
location.

In September, 2002, the Delaware office closed, and Ms.
Pysher was officially transferred to an office in Columbus.  At
some point while in Delaware, Ms. Pysher was ordered to undergo a
psychological examination, but no action resulted from that
examination.

Beginning in approximately June, 2000, Ms. Pysher applied
for other jobs with ODJFS.  She submitted well over 100 job
applications for jobs for which she believed she was qualified.
She was interviewed for several of the jobs but not hired for
any.  At least in some cases, she believed that the successful
applicants were not qualified.  She also believed that the
process was unfair at times because after she applied for a job
for which she had qualifications, the job was re-posted and
others with similar qualifications were considered and hired.

III.

The defendants' first argument in support of their motion
for summary judgment is that nothing which occurred during Ms.
Pysher's employment in Zanesville, Delaware or Columbus
constituted a "materially adverse job action."  Setting aside
for the moment her claim that she was not promoted for
retaliatory reasons, the Court must determine whether any of the
conditions of employment described by Ms. Pysher in her
deposition and her other filings constituted the type of adverse
job action which would support a claim for discriminatory or
retaliatory treatment in the workplace.  The Court makes this
determination with respect to the recent Supreme Court decision

in <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 126 S.Ct.
2405 (2006).

In <u>Burlington Northern</u>, the Supreme Court first noted that
there is a difference between discriminatory treatment prohibited
by Title VII and retaliatory treatment against an employee who
has complained about work-related discrimination.  The Court held
that an employer may violate the anti-retaliation provision by
taking actions which affect the employee outside the workplace
and which therefore go beyond affecting the terms and conditions
of employment.  However, Ms. Pysher has not alleged retaliation
beyond the four walls of her workplace.  As a result, the Court's
inquiry concerning whether she has stated actionable claims
either for direct discrimination or retaliation are essentially
the same.  For either claim, Ms. Pysher must demonstrate a
material adverse job condition because, as the Supreme Court
stated, "we believe it is important to separate significant from
trivial harms" and because "Title VII...does not set forth 'a
general civility code for the American workplace.'"  <u>Burlington</u>
<u>Northern</u>, 126 S.Ct. at 2415, <u>quoting</u> <u>Oncale v. Sundowner Offshore</u>
<u>Services, Inc.</u>, 523 U.S. 75, 80 (1998).

In order to show that such an adverse action has occurred,
the Supreme Court held that the actions of the employer must be
those which would deter a reasonable employee from reporting
workplace discrimination because of the deterrent effect of the
employer's actions.  Consequently, in order to state a claim for
retaliation, the employee must, at a minimum, allege or prove an
action taken by the employer which "well might have 'dissuaded a
reasonable worker from making or supporting a charge of
discrimination.'" <u>Id</u>., <u>quoting</u> <u>Rochon v. Gonzales</u>, 438 F.3d 1211,
1219 (D.C. Cir. 2006).  The Court intended this standard to
"screen out trivial conduct while effectively capturing those
acts that are likely to dissuade employees from complaining or

7

assisting in complaints about discrimination." Id. at 2416.

The Court of Appeals for the Sixth Circuit has specifically recognized that Burlington Northern has not changed the standard to be applied under Title VII in determining whether a materially adverse job action has occurred. See Michael v. Caterpillar Financial Services Corp., 496 F.3d 584, 593-94 (6th Cir. 2007). That court, citing to Ford v. General Motors Corp., 305 F.3d 545, 553 (6th Cir. 2002), recognized that a materially adverse change in the terms and conditions of employment includes more than some inconvenience to the employee or some change in job responsibilities. When the claim is that job responsibilities were taken away, those responsibilities must be "significantly diminished" or must otherwise be reasonably material under the unique facts of the employee's situation. Id. In Burlington Northern, the Court concluded that even a reassignment of an employee to perform other duties falling within the same job description can be materially adverse. The Court noted that "[c]ommon sense suggests that one good way to discourage an employee...from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." Burlington Northern, 126 S.Ct. at 2416. In Michael v. Caterpillar Financial Services Corp., supra, the Court of Appeals concluded that such things as placing an employee briefly on paid administrative leave and putting an employee under a 90-day performance plan, even though the latter did not entail relieving the employee of many job responsibilities, "appear to meet this relatively low bar" for retaliatory actions set by Burlington Northern. Id. at 596.

Ms. Pysher clearly alleges that all of the occurrences described in her complaint and about which she testified at her deposition were taken in retaliation for her having successfully

sued OBES and won reinstatement to her position.  If, as she
alleges, she was denied the opportunity to perform meaningful
supervisory duties and was essentially ostracized by the
Zanesville office employees in a manner that made it difficult,
if not impossible, for her to perform her job in a satisfactory
manner, such actions would also appear to meet the "relatively
low bar" set by Burlington Northern.  A trier of fact could
conclude that if an employee knew that, following the leveling of
a charge of discrimination against her employer, she would be
placed in a job situation which would eventually became so
intolerable that she had to request a transfer, that employee
would reasonably have been dissuaded from making the claim of
discrimination in the first instance.  That is all that the
materiality prong of the Burlington Northern test requires, and
Ms. Pysher has satisfied it.  Consequently, defendants cannot be
granted summary judgment simply because Ms. Pysher cannot prove
that she was the subject of adverse employment action.  Because
it is undisputed that her prior litigation activity was protected
by Title VII and that the defendants were aware of this activity,
the only other element of the *prima facie* case which Ms. Pysher
must satisfy is demonstrating a causal connection between her
protected activity and the adverse employment action.  See Morris
v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).
The Court therefore turns to this inquiry.

IV.

     According to the Court of Appeals, in order to demonstrate a
causal connection between protected activity and adverse job
action, a plaintiff must come forward with some evidence to show
that the actions occurred because the employee previously engaged
in protected activity.  "Evidence that the defendant treated the
plaintiff differently from identically situated employees or that
the adverse action was taken shortly after the plaintiff's

9

exercise of protected rights is relevant to causation." <u>Adair v.
Charter County of Wayne</u>, 452 F.3d 482, 490 (6th Cir. 2006),
<u>quoting</u> <u>Allen v. Michigan Dept. of Corrections</u>, 165 F.3d 405, 413
(6th Cir. 1999).  As the Court explained, however, the fact "that
the actions complained of followed the protected activity closely
in time, standing alone, is insufficient to establish the
causation element of a retaliation claim." <u>Id.</u>, <u>citing</u> <u>Nguyen v.
City of Cleveland</u>, 229 F.3d 559, 566 (6th Cir. 2000).  Thus, Ms.
Pysher may not succeed on her retaliation claim here unless she
can show not only that the alleged retaliatory actions took place
shortly after she engaged in protected activity (or, in this
case, achieved a positive result from her litigation activity),
but that there is some other evidence from which the trier of
fact could infer that the reason Ms. Pysher was treated in the
manner about which she complained was because she had litigated
employment issues with OBES in the past.

Defendants' entire argument on this point, made in their
motion for summary judgment and repeated *verbatim* in their
memorandum in opposition to Ms. Pysher's motion for summary
judgment, is as follows:

> In addition, Ms. Pysher has absolutely no
> evidence that any "retaliation" to which she
> was subjected was motivated by any protected
> activity in which she engaged.

They have presented no affidavits from any official setting forth
any reason why Ms. Pysher was treated in the manner she
described.  Thus, the Court's task is limited simply to
determining whether, should Ms. Pysher testify at trial in the
same way as in her deposition, the trier of fact would be
entitled to find a causal connection between her prior protected
activity and the events which occurred primarily at the
Zanesville office.

A substantial argument could be made that the conditions Ms.

Pysher experienced at the Zanesville office were unrelated to her
prior litigation activity.  Rather, the picture which she paints
of the office is that it was a close-knit group very used to
performing job duties, and behaving a certain way in the
workplace, without any outside interference.  It appears that the
resentment demonstrated by other office workers in Zanesville,
particularly by non-supervisory employees, occurred not because
Ms. Pysher had successfully litigated an employment claim against
OBES, but simply because she was attempting to "rock the boat" in
a way which would have prevented these employees from doing their
jobs the way they had always done them.  Many of the actions
described by Ms. Pysher occurred only after she had taken some
affirmative action to change something in the workplace, such as
counseling (or asking Mr. McNair to counsel) female employees on
their manner of dress or removing inappropriate material from the
bulletin board.

On the other hand, while she was in Zanesville, Ms. Pysher
applied for a number of different positions, many of which would
have been promotions.  She also asked repeatedly for higher-level
management officials within OBES to intervene in order to remedy
the conditions under which she had to work.  Their failure to
intervene timely, and their ultimate choice to transfer her out
of the office environment rather than addressing what could
reasonably be described as inappropriate behaviors within that
workplace, lend some credence to Ms. Pysher's assertion that she
was treated differently or unreasonably because of her history of
litigation.  See, e.g., Ford v. General Motors Corp., 305 F.3d
545 (6th Cir. 2002) (finding a factual issue on this prong of the
retaliation case because of a supervisor's awareness of
complaints of a racially hostile workplace and that supervisor's
failure to diffuse the racial tension in the department, even
though the racial tension itself did not result from retaliatory

motives).  Thus, this claim survives summary judgment.

V.

Apart from the failure to promote claim, the only other claim which the Court can reach upon its merits is Ms. Pysher's hostile work environment claim.  As discussed in the following section, any claims which Ms. Pysher might have under either the Americans with Disabilities Act or the Age Discrimination in Employment Act are barred by the Eleventh Amendment, and she has no colorable claim under the due process clause nor any retaliation claim under §1983.  In this section, therefore, the Court will examine Ms. Pysher's testimony to determine whether she could satisfy a reasonable trier of fact that she was subjected to a hostile work environment on account of any impermissible factors such as age or sex.

The touchstone of a hostile work environment claim is proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).  There is both a subjective and an objective prong to this standard.  In other words, "the [objectionable] conduct must be severe or persuasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." Black v. Zaring Homes, 104 F.3d 822, 826 (6th Cir. 1997).  There would appear to be no question that Ms. Pysher believed that her work environment was hostile or abusive.  Consequently, the question before the Court is whether a reasonable person would have found it to be that way.

In answering this question, the Court looks at various factors including how frequently the alleged hostile or abusive acts occurred, how severe they were, whether the victim was

physically threatened or humiliated in public, and whether the
environment unreasonably interfered with his or her work
performance.  See, e.g., Clark v. United Parcel Service, 400 F.3d
341, 351 (6th Cir. 2005).  Although the work environment as a
whole must be viewed by the Court, including all alleged acts of
harassment or abuse, if such acts are irregular and sporadic
rather than continuous and frequent, it is much more difficult
for the victim to prove a hostile work environment claim.
"Isolated incidents...unless extremely serious, will not amount
to discriminatory changes in the terms and conditions of
employment."  Bowen v. Shawnee State University, 220 F.3d 456,
463 (6th Cir. 2000).

     In the roughly 18 months she spent in the Zanesville office,
Ms. Pysher recounted only a handful of incidents which she
contends were hostile or abusive in any way.  She testified at
her deposition that Mr. Hoffer occasionally referred to her as a
"dark angel" or someone with a split personality.  He also called
her unstable and on several occasions yelled at her during
meetings.  She recounted a handful of other incidents, mostly
having to do with disagreements between herself and persons
supposedly under her supervision.  Several of those employees
allegedly refused to go along with changes which she attempted to
implement and contested her efforts to address some dress or
behavior issues which she identified, including an issue with Mr.
Hoffer and his laptop computer.  It is difficult to determine
whether all of these events could be classified as motivated by
Ms. Pysher's gender or her alleged disability (a psychological
condition for which she had sought treatment).  Nevertheless, the
Court concludes, applying the above legal standards, that the
totality of these incidents represents nothing more than a
sporadic and discontinuous pattern of unpleasant workplace
episodes and does not rise to the level of a hostile work

environment.  Consequently, no reasonable trier of fact could
conclude, based on the evidence currently before the Court, that
Ms. Pysher's right to a workplace free from hostile or abusive
conduct based on any protected category, such as gender, age, or
disability, was violated.

VI.

Ms. Pysher has asserted a number of claims which suffer from
fatal legal defects.  First, she has no viable claim against any
of the individual defendants under federal law.  Her claim for
retaliation arises exclusively under Title VII, and individual
employers or supervisors are not liable under that statutory
section.  Wathen v. General Electric Co., 115 F.3d 400 (6th Cir.
1997).  Second, in Kimel v. Florida Board of Regents, 528 U.S. 62
(2000), the United States Supreme Court held that the Age
Discrimination in Employment Act does not pass muster under
Section 5 of the Fourteenth Amendment because "the substantive
requirements the ADEA imposes on state and local governments are
disproportionate to any unconstitutional conduct that could
conceivably be targeted by the Act."  Id. at 82.  Based on that
finding, the Court concluded that although Congress could
legitimately require private employers to comply with the ADEA,
it could not similarly require the states to do so.  The
following year, in Board of Trustees of University of Alabama v.
Garrett, 531 U.S. 356 (2001), the Supreme Court held that, for
the same reasons, the Americans with Disabilities Act's
employment provisions could not be applied against a state
government.  Thus, any claim which Ms. Pysher might be asserting
under the ADEA is also barred by the Eleventh Amendment immunity
granted to the State of Ohio by the United States Constitution.

VII.

Ms. Pysher's failure to promote claim appears to be a part
of her overall claim for retaliation.  She asserts that after she

14

experienced the retaliatory working conditions in the Zanesville office, she began to apply for promotions as a way to extricate herself from that work situation.  In fact, from April through September of 2000, she bid on approximately 125 positions.  She continued to bid on jobs after she was transferred to Delaware, bidding on at least ten jobs in January and February of 2001. She was not selected for any of these positions.  She asserts generally that she was either more qualified for the position than the person selected or that some irregularity occurred in the selection process, such as reposting the job and considering others with the same or lesser qualifications for the position after she was passed over.

It is clear that the failure to promote a person for retaliatory reasons is actionable under Title VII.  The denial of a promotion is an adverse job action, and defendants, in their memorandum addressing whether Ms. Pysher suffered a materially adverse job action, do not contend otherwise.  In fact, the motion for summary judgment does not directly address Ms. Pysher's failure-to-promote claim at all.  Although Ms. Pysher addresses this claim in her motion for summary judgment, she has not established by appropriate evidentiary material all of the elements necessary for the Court to grant her summary judgment with respect to any promotion for which she was not selected.  In particular, the Court can neither determine for any particular promotion opportunity that the defendant selected someone less qualified than Ms. Pysher, nor can the Court determine that the decision-makers in each case were aware of Ms. Pysher's protected activity and that other circumstances suggest that they intended to retaliate against her for having engaged in protected activity.  The Court notes that Ms. Pysher's first application for promotion did not come until almost a year after she was reinstated, and that such an elapse of time is significant

15

because it requires that Ms. Pysher present additional evidence
of retaliation in order to succeed on her claim.  Nevertheless,
because the defendants have not directly requested summary
judgment on this claim, it will survive these summary judgment
proceedings.  It is the Court's intent, however, following the
issuance of this opinion and order, to convene a status
conference to discuss how the parties wish to proceed on the
retaliation claim, and whether additional summary judgment
proceedings on this claim might be appropriate after additional
discovery is conducted.

VIII.

Finally, Ms. Pysher has moved for leave to amend her
complaint to add a new defendant, Keith Nichols.  It is unclear
what involvement Mr. Nichols may have had in the events in
question, or how he could be held liable to Ms. Pysher under 42
U.S.C. §1983, the only statute she cites which permits claims to
be asserted against individuals (Title VII and statutes modeled
after Title VII do not).  Consequently, that motion will be
denied.

IX.

Based on the foregoing, defendants' motion for summary
judgment (#80) is granted in part and denied in part.  All claims
against all defendants other than Ms. Pysher's Title VII
retaliation claims against defendant Ohio Department of Jobs and
Family Services (which retaliation claims include her claim for
retaliatory work conditions and her claim for retaliatory failure
to promote) are dismissed.  All other pending motions, including
Ms. Pysher's motions for summary judgment and for leave to amend

16

(#s 81 & 108) are denied.  The Clerk shall set this matter for an in-person status conference on a date convenient to the parties.


                              /s/ Terence P. Kemp
                              United States Magistrate Judge